CALIFORNIA PACKING CORPORATION v.
INDUSTRIAL COMMISSION OF UTAH et al.

No. 6305.   Decided March 29, 1941.   (111 P. 2d 795.)

*DeVine, Howell & Stine* and *Neil R. Olmstead,* all of Ogden, for plaintiff.

*Joseph Chez,* Atty. Gen., and *Elias Hansen,* of Salt Lake City, for defendants.

McDONOUGH, Justice.

Review of a decision of the Industrial Commission granting benefits to the widow and minor children of J. Frank Johnson, deceased, who died as a result of injuries received while in the course of his employment with the California Packing Corporation.

The only question raised is whether the formula used, by the Commission for determining the amount of benefits, based on a finding that the plaintiff company was, at the time of the injury, operating its business seven days per week, was the proper formula. The plaintiff contends that a different formula, which would not grant as large a weekly benefit payment, should have been used, on the theory that the usual operation of the company's business was six days or less per week.

The statute, Section 42-1-70, R. S. U. 1933, as amended by Chap. 41, Laws of Utah 1937, provides that where the "employment" is seven days per week one formula should be used in determining the amount of compensation or benefits while if "employment is five and one-half or six days per week" another formula should be used, resulting in a lesser award.

The same section defines what is meant by "five and one-half or six-day employment" and by "seven-day employment" as follows:

"Employment shall mean pursuit in the usual trade, business or profession of the employer. Five and one-half or six-day employment shall mean pursuit in the usual trade, business or profession, *the usual operation of which is six days or less per week.* Seven-day employment shall mean pursuit in the usual trade, business or profession, *the usual operation of which is seven days per week.*" (Italics added.)

In determining whether the employment was operated "on a five and one-half, six or seven day basis" the Commission did not find what the "usual operation" of the company's business was but found instead that "the employer's business was being carried on seven days per week." And on this finding the Commission used the formula set out where there was a "seven-day employment."

The facts are undisputed and reveal that for more than one year prior to the time of the injury plaintiff company had been operating its business six days or less per week, with the exception of eight weeks of seven-day operation. The stipulation of the parties shows that during the 54 weeks preceding date of the injury the company operated five days per week for nineteen weeks, 5½ days per week for sixteen weeks, six days per week for eleven weeks, and seven days per week for eight weeks. This stipulation was the only evidence before the Commission relative to such matter. Of the eight weeks of seven-day operation, five immediately preceded, and one was, the week in which the injury occurred. There were, therefore, six consecutive weeks, plus two prior successive weeks, of seven-day operation in plaintiff's business in 54 weeks of operation. The evidence further discloses that during the two corresponding weeks, a year prior to the accident, the operation of plaintiff's business was less than seven days per week. Plaintiff company operates a canning business, and for the most part the business is conducted when, and as long as, necessary to take care of the products to be canned.

Section 70 of Chapter 1, Title 42, 42-1-70, R. S. U. 1933, is entitled "Average Weekly Wage—Basis of Computation." The intention of the legislature in adopting the formulae therein set out for determining such average weekly wage, was to provide an equitable basis for determining, within the limits prescribed, the award to be made for "loss sustained on account of * * * injury or death." 42-1-43, R. S. U. 1933.

An employee's likelihood of being employed for a specified number of days per week would, in the case of the aver-

age employee, depend upon whether the usual operation of the "trade, business or profession of the employee" in which he was employed was such number of days each week. Clearly the formulae prescribed have no reference to the number of days per week the employee in question had theretofore worked, nor to the number of days per week the trade, business or profession of his employer worked at the time of the injury or death of the employee. The basis prescribed is the usual operation of the trade, business or profession of the employer. If, therefore, the Commission by its finding that "the employer's business [at the time of the deceased's injury] was being carried on seven days per week," reflects a view on its part that the weekly operation of the business is to be determined by the operation at the time of the injury, it clearly misconstrued the statute.

If, on the other hand, the Commission concluded from the evidence, hereinbefore recited, that the usual operation of the business of the plaintiff was seven days per week, it erred as a matter of law. From the undisputed facts, the only reasonable conclusion deducible is that the "usual operation" of the business was "five and one-half or six days per week." There is no evidence to support a finding (if such finding were made) that such operation was seven days per week unless the mere fact that it was so operating at the time of the injury and had done so for some eight out of 54 weeks prior thereto is sufficient upon which to base such finding, in the face of the stipulated fact that for 46 weeks of the 54-week period it had operated six or less days per week.

True, in a proper case it might be correctly found that the number of days employment per week in the usual operation of a business corresponded to the number of days of weekly operation at the time of injury, even though over a long period prior thereto the number of days of employment per week were greater or less than such number. In such case, however, some evidence would have to be adduced

to show a change in the "usual operation" of the business. In the instant case, had it been shown that the policy of plaintiff company relative to the number of days of operation per week had some five or eight weeks prior to the injury, been changed or that the business, other than seasonal, of such company had so increased as to make an inference of change in usual operation a reasonable one, a finding to that effect would have support in the evidence. There being no such or any evidence other than that detailed hereinabove as to prior operation, the conclusion is compelled that the "usual operation" of plaintiff's business under the evidence adduced was five and one-half or six days per week.

The award of the Industrial Commission is therefore set aside, and the cause remanded to the Commission for a redetermination of the award on the basis of a "five and one-half or six day operation" of plaintiff's business.

MOFFAT, C. J., and WOLFE, LARSON, and PRATT, JJ., concur.